### Chicago City Railway Company v. Anna M. Schuler.

#### Gen. No. 10,838.

1. OFFERS OF COMPROMISE—*when error to refuse instruction concerning.* Where evidence has been heard by the jury bearing upon alleged offers of compromise, it is error for the court to refuse to instruct the jury that such offer should not be regarded as a recognition of liability.

2. ORDINARY CARE—*definition of.* Ordinary care is such as an ordinarily prudent person exercises upon any and all occasions; not such as such a person usually exercises.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed and remanded. Opinion filed December 18, 1903. Rehearing denied January 26, 1904.

WILLIAM J. HYNES and JOHN B. BRADY, for appellant; MASON B. STARRING, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

Appellee recovered judgment against appellant for injuries claimed to have been sustained by her by falling into an excavation alongside of appellant's railway track, while alighting from one of its cars.

The evidence was in close conflict upon the questions whether appellee was in the exercise of ordinary care and whether appellant was guilty of negligence.

During her cross-examination appellee testified as follows:

" Q. Do you ever remember of a man coming to the house that you boarded at, I think the Goodrich's, and asking you to go to see Mr. Peck of the railroad company? (Mr. Peck is one of the company's claim agents.) A. There was a man came there and wanted to make a settlement, which I refused to do.

Q. Well, I ask you to remember of a man asking you to go and see Mr. Peck? A. Yes. I don't know who he wanted me to go and see. He simply said, ' Go over to the railway company.' He didn't say Mr. Peck or anybody else.

Q. Did you go out at all on the street with him? A. Yes, he helped me as far as the doctor's.

Q. That is Dr. Rogers? A. Yes.

Q. Did you start to go with him over to the railroad offices? A. Oh, no.

Q. Well, why did he go with you over to Dr. Rogers'? Was it at your request or at his request? A. Why he wanted to make a settlement and I said no. I said I wanted advice. I could not have any talk with him. And he said I could not have anybody to hear anything that was said. At last he said he would go into my doctor's with me, and we went in there, and he was very impertinent to the doctor because I would not make a settlement. * * * He allowed that the doctor was influencing me, and if I did not make a settlement then that the railroad company would just keep appealing and appealing as long as I lived. * * * * "

The court refused the following instruction asked by appellant:

"The court instructs the jury that the law looks with favor upon settlements out of court of matters that involve or lead to lawsuits or litigation, regardless of whether the party to be held is liable or not. And the jury must not take any evidence that has been given in this case in relation to settlement or negotiation for compromise of this case, as any recognition whatever on the part of the defendant of any liability to the plaintiff for her alleged injuries. It would be improper for the jury to consider such negotiations or talk settlement or compromise as an admission on the part of the defendant that it was liable for any of the alleged injuries to plaintiff. (Refused.)"

This instruction should have been given. The testimony of appellee above quoted necessarily conveyed to the jury the impression that appellant was willing to "settle" the case; from which they would be very apt to conclude that appellant regarded itself as liable, otherwise it would not offer to "settle." It was to guard against such a conclusion that the instruction was asked. Its refusal under the state of the proof worked harm to appellant. That it states a correct proposition of law is not denied.

At the request of appellee the jury were instructed that "ordinary care  *  *  *  is that degree of care which an ordinarily prudent person  *  *  *  would usually exercise for her own safety." It is objected that the word "usually" should have been omitted. We think the objection is well taken. Ordinary care is such as an ordinarily prudent person exercises upon any and all occasions, not such as such a person usually exercises. Russell v. Koehler, 66 Ill. 459; A. B. R. R. Co. v. Grimes, 13 Ill. 585.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*