DANIEL P. REUTER, Plaintiff-Appellant, *v.* MARK J. KOCAN, Defendant-Appellee.

Second District   No. 82—375

Opinion filed March 8, 1983.

Carl F. Schroeder, of Nelson, Pietsch, O'Leary, Walters, Schroeder & Cuchna, of Wheaton, for appellant.

R. Gary Gooding, of Gooding and Schroeder, Ltd., of Geneva, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Daniel P. Reuter, plaintiff, sued to recover for personal injuries sustained when a motor bike which he was driving on a private off-road dirt bike trail collided head on with an automobile driven by the defendant Mark J. Kocan. Plaintiff appeals from the judgment entered on the jury verdict for the defendant and from the denial of post-trial motions. On appeal he contends that the defendant was negligent as a matter of law or, alternatively, that the verdict was against the manifest weight of the evidence, and that the jury was not instructed properly.

On August 31, 1978, Daniel Reuter went to an off-road dirt bike trail with his brother Paul, defendant Mark Kocan, and Mark's brother Charles. The dirt trail is on private property located at the corner of Routes 59 and 65 in rural Du Page County. Roughly circular, it twists through many curves. The track was rutted in many places, would change with the weather, had no set lanes, and vision along the track was obstructed by trees, high weeds and brush. No one else was using the dirt track when the Reuters and Kocans arrived.

The parties had previously used the trail for recreation 20 to 25 times each. Although the parties disagreed on whether it was local practice to ride around the trail clockwise or counterclockwise, it appeared from the testimony that the direction was set by whoever was using the track at that time. It was the practice not to ride around in the opposite direction to avoid a head-on collision.

The head-on collision took place along a "blind" curve. After the Reuters and Kocans arrived, the Dodge Colt was parked on the infield portion inside the track. Plaintiff's brother, who owned the dirt bike, rode it first, then gave the bike to plaintiff who started out clockwise (east). "Minutes" later defendant drove the Dodge Colt onto the track also proceeding clockwise, because he wanted to "see what it was like." He had been on the track before as a passenger in a truck when dirt bikes were on the track, and had driven on the open track in his own car when no one else was using the trail, but had not driven a car when other bikes were on the trail. After driving a short distance, defendant stopped because the track was too narrow and rutted, he made a "three-point" turn to return to the infield and proceeded counterclockwise (west). He could not maneuver off the track onto the infield because, he explained, tires blocked the path. He did not get out of the car to move the tires blocking his exit onto the infield because the car would have stalled and he did not know how to restart it. He could not recall if the car had a horn. He went an undetermined distance counterclockwise on the inside part of the track until he reached the curve, and saw plaintiff on the dirt bike moving "pretty quickly" around the curve from the inside to the outside part of the curve for only "a second" before plaintiff struck the middle of the front fender, and flew off 15 to 20 feet away, sustaining injury to his left ankle. Defendant estimated that the car blocked two-thirds of the path along the curve. Defendant could not recall if he stopped prior to the head-on collision, but said he was moving slowly. He thought that plaintiff was "far away," at the other end of the trail, but said that he did not really know.

Plaintiff was 19 at the time of the accident and familiar with the dirt bike involved. He testified that 10 to 15 feet separated the two vehicles when he first saw the car approaching at approximately five miles per hour, that he had "no time" to apply the brakes, and that he did not know that his brother's car was on the track before the collision. As he took the curve along the inside, he could see 10 to 20 feet ahead. Out of the corner of his eye plaintiff saw his brother and defendant's brother 100 to 150 feet away waving their arms, but he thought they wanted their turns to ride. He took the curve at 20 to

25 miles per hour, staying to the inside throughout. He testified that he "may have" told defendant a few days after the accident that he thought he saw a dust cloud from another dirt bike and gave chase to catch it.

Defendant's brother, Charles Kocan, testified that from his vantage point 30 feet north of where the accident occurred, he could see both vehicles approach the curve from opposite directions. He was yelling "stop" to plaintiff at the top of his voice, waving both hands over his head to catch plaintiff's attention, but plaintiff was not looking in his direction. The collision occurred "about a second" later. He said that the Dodge Colt had been stopped for "about ten seconds."

While it is difficult to determine from the record the exact spot defendant entered the dirt trail and the precise place of the collision, fair inferences may be reached by references of the witnesses to a diagram and photographs in evidence.

The trial court denied defendant's motion for a directed verdict. The jury, instructed on comparative negligence, returned a verdict for defendant and against plaintiff.

Before reaching the contentions of the parties we note the unusual factual profile of this case as it bears on the standard of negligence to be applied.

Courts have applied concepts of ordinary negligence to the operation of off-road recreational vehicles. (See Annot., "Negligent Operation of Dune Buggy," 2 A.L.R.4th 795, 796 (1980); Annot., "Negligence—Operation of Snowmobile," 42 A.L.R.3d 1422 (1972); see also *Casteel v. Smith* (1982), 109 Ill. App. 3d 1094, 1096 (under statute (Ill. Rev. Stat. 1981, ch. 95½, par. 605—1(B)) making illegal "careless, reckless or negligent" operation of a snowmobile).) Although the courts have applied to recreational vehicle the rules of the road which govern all motor vehicles where appropriate (see Annot., 2 A.L.R.4th 795, 796 (1980)), it has been generally held that in personal injury suits the rules of the road have no application to vehicles operated on private ways or premises (see generally 7A Am. Jur. 2d *Automobiles & Highway Traffic* sec. 205, at 380 (1980)). In Illinois, the Illinois Vehicle Code applies only to vehicles on highways except for articles not applicable to this case (Ill. Rev. Stat. 1981, ch. 95½, par. 11—201). Since the parties agree that the site of the collision was on private property, the only duty required of defendant in operating the Dodge Colt was a common law duty to exercise such care to avoid danger as an ordinarily careful and prudent person would exercise in the same or similar circumstances. (See *Chicago Union Tractor Co. v. Chugren* (1904), 209 Ill. 429, 430-31; *Martin v. Hertz Corp.* (1982), 104 Ill.

App. 3d 592, 594.) Notwithstanding that the issue of defendant's negligence is ordinarily a question of fact, it may be decided as a matter of law where all reasonable men of fair understanding would agree in their deductions from the evidence that defendant was guilty of negligence in the operation of his vehicle at the time and place in question. *Grass v. Hill* (1981), 94 Ill. App. 3d 709, 714.

■■ We cannot agree with plaintiff's initial argument that defendant was guilty of negligence as a matter of law by driving a four-wheel vehicle on the dirt track primarily used by motorcyclists. There was testimony that other four-wheel vehicles had previously been on the track along with dirt bikes. Nor can we conclude that the defendant was negligent as a matter of law in reversing his direction to return to the infield when he believed he could not continue clockwise along the rutted trail. The fact that a party has not chosen the safest course of conduct (*Allen v. Dhuse* (1982), 104 Ill. App. 3d 806, 809), or that the course of conduct chosen entails certain hazards, is not proof of negligence as a matter of law unless the less-safe course of action is unreasonable. (*Connolly v. Melroy* (1978), 63 Ill. App. 3d 850, 853-54.) Applying these rules, it was for the jury to ascertain whether it was unreasonable for defendant to turn around rather than to drive off the track, in view of his uncontroverted testimony that his exit from the trail was blocked by automobile tires along the roadside and his testimony that the vehicle was in danger of stalling if he left it unattended and moved the tires. If reasonable minds may differ as to the inferences and conclusions to be drawn from the facts it is improper to direct a verdict or to enter judgment *n.o.v.* (*Martin v. Hertz Corp.* (1982), 104 Ill. App. 3d 592, 597.) We conclude that the trial court did not err in refusing to enter judgment against the defendant as a matter of law.

■■ We conclude, however, that the verdict was against the manifest weight of the evidence and that the trial court erred in refusing to grant plaintiff's motion for a new trial. The evidentiary standard for granting a new trial is less conclusive than that for directing a verdict or entering judgment *n.o.v.* (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310.) On a motion for a new trial a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310.

There was uncontroverted evidence that defendant had reason to know that plaintiff would be approaching from the opposite direction if defendant turned his vehicle around. From the record there is also a strong inference that defendant could expect that plaintiff would

have no way of knowing that a vehicle would be coming from the opposite direction. Defendant's own testimony was that a vehicle would follow in the direction set by others on the track to avoid a head-on collision. Defendant's further testimony that he was moving "slowly" does not adequately explain his failure to warn plaintiff that he was blocking two-thirds of a curve at a point where the view of his presence was completely obstructed. The fact that after he turned his vehicle around defendant continued substantially past the point at which he was able to make entry from the infield onto the track substantially weakens his argument that he was not negligent in any degree in his conduct.

*Fishel v. Givens* (1977), 47 Ill. App. 3d 512, cited by plaintiff, is of some aid in reaching the conclusion that a new trial is required, although the facts are not identical. In *Fishel* a party was found negligent as a matter of law when he rounded a blind curve on his mini-bike in the opposing lane of a private drive and collided with a motor vehicle even in the absence of evidence that his vehicle was out of control. The court noted that the driver of the mini-bike "should have been aware that his actions created a danger, since someone else had the right-of-way. In the instant case, knowledge of the risks and the possible existence of another vehicle with superior rights to use that space, appears to be clear and undisputed evidence of contributory negligence." 47 Ill. App. 3d 512, 520.

Defendant's argument that plaintiff was guilty of contributory negligence in rounding the curve at an excessive speed, apparently believing from his own admission in evidence that he thought a cloud of dust ahead of him was another cycle which he wished to race, is of no aid to defendant in the circumstances. Plaintiff's negligence, even assuming as defendant argues that there would have been room for plaintiff to have gone around the vehicle if he were driving carefully, is not a bar to recovery even if it is greater than that of the defendant where, as here, the jury was properly instructed on the "pure" form of comparative negligence. *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 27-28.

■ Since the questions may occur on retrial we will comment briefly on the plaintiff's claim that the trial court erred in refusing to give three of his tendered instructions, respectively, Illinois Pattern Jury Instruction, Civil, Nos. 12.04, 12.05 (2d ed. 1971) (hereinafter cited as IPI Civil) on the negligence of third persons who are not parties, and the longer version rather than the shorter version of 15.01 defining "proximate cause." (IPI Civil No. 15.01.) There is no evidence in the present record sufficient to raise an issue as to the possi-

ble negligence of defendant's brother in either the maintenance of the car or in not warning the defendant of the danger. Nor is there any basis for the claim that the owner of the property on which the dirt track was located owed a duty of ordinary care to keep the private premises safe for use by any person using the property as a trespasser or as a licensee for recreational purposes. See Ill. Rev. Stat. 1981, ch. 70, pars. 33, 36; *Pashinian v. Haritonoff* (1980), 81 Ill. 2d 377, 379-81.

■ Similarly it was not error to refuse the additional language contained in IPI Civil No. 15.01 ("It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury"). We conclude that the instructions given by the trial court properly presented the case and that there was no error in refusing the additional instructions tendered by the plaintiff.

The judgment of the circuit court of Du Page County is therefore reversed and the cause is remanded to the trial court with directions to grant plaintiff's motion for a new trial consistent with this opinion.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.